FILED
Sep 25, 2018
12:57 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **GABRIELA OVANDO,** | ) Docket No. 2018-08-0362 |
| **Employee,** | ) |
| **v.** | ) |
| **TWIN STONE DESIGN &** | ) **State File Nos. 22312-2018** |
| **INSTALLATION and F&V** | ) 39874-2018 |
| **CERAMIC INSTALLER,** | ) |
| **Employers,** | ) |
| **And** | ) |
| **BRIDGEFIELD INS. CO.** | ) **Judge Allen Phillips** |
| **and** | ) |
| **TRAVELERS INS. CO.,** | ) |
| **Carriers.** | ) |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Ms. Ovando requested medical and temporary disability benefits for an injury on March 13, 2018. The dispositive issue is which of two employers she worked for on that date. The Court conducted an Expedited Hearing on September 12, 2018, and holds Ms. Ovando worked for Twin Stone.

### History of Claim

Ms. Ovando worked as a tile finisher, a job requiring grouting and caulking. On March 13, she fell and fractured her right arm. She wanted payment of medical bills and a panel of physicians for treatment.[1]

Ms. Ovando's injury occurred at a hotel construction site in Nashville. Skanska, the general contractor, subcontracted with Twin Stone to install bathroom tile in the hotel rooms. Twin Stone utilized various subcontractor installers, including F&V. Twin Stone assigned individual bathroom units to its subcontractors and coordinated payments to

---

[1] Ms. Ovando conceded she had no proof regarding temporary disability benefits at this time.

1

them on a per-unit basis. Twin Stone's subcontractors executed subcontractor agreements and carried their own workers' compensation insurance. Ms. Ovando worked for various subcontractors, including F&V, but did not enter into a subcontractor agreement.

How Ms. Ovando began working at the site is disputed. For her part, she testified Juan Ortiz, a representative of Twin Stone, telephoned her home in Memphis to inquire if she was interested in tile-finishing work. She said she neither knew how Mr. Ortiz obtained her number nor how he knew of her experience in grouting and caulking. Nevertheless, she traveled to Nashville, met Mr. Ortiz, and observed the prospective job. She accepted the per-unit rate for finishing quoted by Mr. Ortiz and accepted his offer to live in an apartment provided by Twin Stone. She said she considered herself Twin Stone's employee.

Conversely, Mr. Ortiz denied calling Ms. Ovando. Instead, he said she came to the site and inquired about a job. He then coordinated Ms. Ovando's work for the subcontractors. He agreed with her testimony regarding the pay rate and noted another tile finisher had the same arrangement. Ms. Ovando and another worker were available to perform grouting and caulking for subcontractors, and the subcontractors paid them out of their per-unit fee.

Ms. Ovando began working in December 2017, approximately two weeks after meeting with Mr. Ortiz. She described that she documented her work for the subcontractors by writing her name on the wall, or a sheet of paper on the wall, of each bathroom where she worked. The installers wrote their names on the wall too. Mr. Ortiz then compiled a list of the rooms each subcontractor installed in a given week and noted which bathrooms Ms. Ovando finished. Payment then passed through Twin Stone to the subcontractors and then to Ms. Ovando.

Ms. Ovando's injury occurred in a bathroom tiled by "Hector," according to the name written on the wall, although she did not know which subcontractor employed him. But, after her injury, Mr. Ortiz and another Twin Stone employee took her to a hospital. She said the men told her not to tell hospital staff that she was injured at work. The hospital provider diagnosed her fracture, and she later saw an orthopedic surgeon who recommended surgery to straighten the fracture; she declined. She later agreed to the operation but has not had it because both Twin Stone and F&V denied her claim. She introduced medical bills from her surgeon, a physician at the Hughston Clinic.

Regarding her employment relationship, Ms. Ovando testified Twin Stone provided her the raw materials and tools. She wore a Twin Stone shirt, reflective safety vest, and helmet provided by Twin Stone. The shirts and vests bore Twin Stone's name. Copies of text messages between Ms. Ovando and Mr. Ortiz memorialized their conversations regarding the specifics of the work she was to perform, the pay rate, and her work hours. When Ms. Ovando requested an increased per-unit fee, Mr. Ortiz

2

renegotiated the rate with the subcontractors, another fact confirmed by text message. None of the parties offered contrary documentary evidence. Ms. Ovando also said Mr. Ortiz had authority to review the quality of her work, and he coordinated her housing arrangements in Nashville. She detailed many discussions between them about her housing.

Twin Stone confronted Ms. Ovando regarding her version of the hiring process as an odd scenario of her receiving a call from someone she did not know but nevertheless traveled to Nashville to accept a job. Further, it pointed out she never received direct payments from Twin Stone or worked hourly, and she performed work for several subcontractors. Further, she never completed a Twin Stone application nor had taxes withheld by Twin Stone. It noted all workers at the site were required to attend safety meetings, and the attendance forms from those meetings showed names of contractors other than Twin Stone beside her name, confirming she worked for entities other than Twin Stone.

Twin Stone offered further testimony from Mr. Ortiz that he had no authority to hire "employees." Though he coordinated the subcontractors' work, he did not require any installer to use Ms. Ovando's services. Further, he denied coordinating her moving to the apartment, negotiating an increased pay rate, or directing her individual work in any way. However, Ms. Ovando had him admit on cross-examination that he testified in discovery that he indeed did those things. She directly impeached him with the text messages between them confirming that he did. Mr. Ortiz said he believed Ms. Ovando was a subcontractor.

Mayra Parente was the Chief Operating Officer of Twin Stone and helped coordinate the company's contract with the general contractor. She said Mr. Ortiz did not have authority to hire employees but could obtain subcontractors. She had no personal knowledge of what Mr. Ortiz might have said about the relationship with Ms. Ovando but said Twin Stone had no record of her being an employee. She also confirmed Twin Stone provided housing because workers who live nearby are "more efficient."

Feliciano Vargas testified he owns F&V and subcontracted with Twin Stone. His contact person was Mr. Ortiz, and he assisted Mr. Vargas in completing the subcontractor agreement.[2] Mr. Vargas did not work at the site after December 2017 but retained "people" there, including "Hector." Mr. Vargas said Mr. Ortiz assigned the units, and the subcontractors were responsible for getting workers to perform the work. He said his workers could use Ms. Ovando's services if they wanted, and they would pay her.

Based on this proof, Ms. Ovando asserted that Twin Stone was her employer. She argued that the factors of Tennessee Code Annotated section 50-6-102(D)(i) applied to

---

[2] Mr. Vargas, Mr. Ortiz and Ms. Ovando speak Spanish as their primary language; Mr. Ortiz is bilingual.

3

this case. Namely, the factors that apply to a determination of an independent contractor apply equally to a determination of which of the two employers is responsible for an injury. Here, it was Twin Stone, through Mr. Ortiz, that Ms. Ovando said controlled the work, her hours, provided her with tools, and set the payment for her work. She pointed to Mr. Ortiz's contradictions between his discovery deposition and trial testimony on these factors.

Ms. Ovando admitted that the bathroom where she was hurt, installed by "Hector," might have been completed by an F&V contractor. Regardless, the factors still weigh in favor of Twin Stone as her employer.

For its part, Twin Stone questioned Ms. Ovando's testimony that she relocated to Nashville based on a call from a man she did not know. It also noted tile grouting is a menial task, and Twin Stone could have found workers in the Nashville area to perform it without seeking out Ms. Ovando in Memphis.

Twin Stone further argued Ms. Ovando was an independent contractor based on the statutory factors. Specifically, she had the option to seek work from other subcontractors, meaning she had control over her own work. Her payments were in cash, and no taxes were withheld by Twin Stone. She reported to work at set hours because of mandatory safety meetings, not because of Twin Stone's directives. Twin Stone's control of the work was only to coordinate forty or more independent contractors for installations. It argued the Court need not invoke Tennessee Code Annotated section 50-6-113, the statutory employer section, because F&V had workers' compensation coverage, and she did not need to "go up the ladder" to Twin Stone. Alternatively, if the Court found Ms. Ovando were a Twin Stone employee, then the Court should consider she was a joint employee of Twin Stone and F&V under Tennessee Code Annotated section 50-5-111.

Finally, F&V echoed Ms. Ovando's arguments that Twin Stone was the proper employer under the statutory factors. It argued there was no proof that it paid Ms. Ovando for work on the date of injury, and its employment relationship with her was "tangential" at best.

**Findings of Fact and Conclusions of Law**

*Standard applied*

Ms. Ovando must come forward with sufficient evidence to show she likely would prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1).

4

*Analysis*

Ms. Ovando must first establish she was an employee and if so, for whom – Twin Stone or F&V. Ms. Ovando contended Twin Stone employed her. The Court agrees.

Initially, the Court considers two definitions. First, an "employee" is a person employed under a contract of hire, either written or implied. Tenn. Code Ann. § 50-6-102(11)(A). The contract of hire is an agreement for an employer to pay an employee for her services. *Beers v. Bhakta d/b/a Ram Constr.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 7, at *11 (Apr. 8, 2015). Conversely, an independent contractor is one who contracts with another to perform work without being subject to the other's control except as to the result of the work. An independent contractor has the right to employ and direct its own workers without the other's control as to the methods used to attain a result. *Peters v. Mitchell d/b/a A Clean Connection, LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 7, at *7-8 (Feb. 8, 2016).

Applying the first definition, the Court holds Ms. Ovando was Twin Stone's employee. Specifically, she entered into an agreement with Mr. Ortiz to receive payment for her services. Mr. Ortiz, on behalf of Twin Stone, negotiated the rate, coordinated payment, and assigned the units where her services were performed. These facts support the forming of an implied contract of hire. Conversely, F&V never entered into an employment agreement of any kind; it simply followed the terms dictated by Twin Stone.

Applying the second definition, the Court finds Twin Stone and F&V were independent contractors. Twin Stone, retained by the general contractor to perform tile installation, entered into a subcontractor agreement with F&V to do the same.

Applying the second definition to Ms. Ovando, the Court finds she was not an independent contractor. Unlike F&V and others, she never completed a subcontractor agreement. Further, a consideration of the following factors of Tennessee Code Annotated section 50-6-102(D)(i) confirm she was not an independent contractor:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities.

The Court will take the factors in turn while noting the Appeals Board's directive that the "factors are not absolutes that preclude an examination of the parties' working relationship as a whole." *Peters*, at *8.

5

First, the Court finds Twin Stone, through Mr. Ortiz, controlled the conduct of the work. Admittedly, he did not personally supervise how Ms. Ovando, or anyone else, actually installed or finished bathroom tile. But, he did see to the assignment of the rooms to complete and coordinated payments to the workers who completed them. In *Peters*, the employer's "jobsite supervisor, would review [a] list and ensure that each task had been completed." *Id.* at *10. Mr. Ortiz performed a similar task here.

Second, the evidence supports a finding that Twin Stone, through Mr. Ortiz, could terminate Ms. Ovando's employment at any time. But for his initial contact with her, Ms. Ovando would not have worked at the job site. Likewise, Ms. Ovando testified she considered Mr. Ortiz her "boss," and the Court believes her. Though her explanations of some facts were less than perfect, she was the more credible of the witnesses. The text messages between them demonstrate the authority he had over her relationship with Twin Stone.

Third, the method of payment here was more like an independent contractor relationship. However, in context, the per-unit payment to Ms. Ovando was based on Mr. Ortiz' documentation of the bathrooms she completed and the assignment of those rooms for completion was within his control. He also renegotiated the rate the subcontractors had to pay to Ms. Ovando, indicating Twin Stone's control over the payment process.

Fourth, Ms. Ovando used helpers, according to Mr. Ortiz. This favors an independent contractor relationship but, again in context, does not change the overarching relationship of Ms. Ovando as an employee. The Court finds any help Ms. Ovando received from family and friends was minimal at best, and the proof established her work did not require regular helpers.

Fifth, Twin Stone provided the raw materials to Ms. Ovando, and she did not use her own tools.

Sixth, regarding the self-scheduling of working hours, the Court finds Twin Stone set Ms. Ovando's hours. She testified she reported to and left work at times set by Mr. Ortiz and the text messages between them confirm that he had control over when she could or should report to work.

Seventh, and finally, the factor of offering services to others does not apply in this context. Ms. Ovando's commitment to working the specific project prohibited her from working elsewhere during the period she lived in Twin Stone-provided housing in Nashville. Twin Stone correctly pointed out that Ms. Ovando did *work* for others, including several different subcontractors. But, it was Twin Stone who controlled the work she did for others.

Based upon the totality of the evidence, the Court holds Ms. Ovando would likely prevail in establishing she was a Twin Stone employee. Given this holding, the Court need not address any issues regarding the statutory employer or joint employee sections of the statute.

**IT IS, THEREFORE, ORDERED** as follows:

1. Twin Stone shall pay Ms. Ovando's medical bills from the Hughston Clinic in the amount of $2,111.00.

2. Twin Stone shall provide Ms. Ovando a panel of orthopedic surgeons under Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) from which she may choose a treating physician.

3. This matter is set for a Status Hearing on **Monday, November 19, 2018 at 9:00 a.m. Central time. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov

**ENTERED this the 25th day of September 2018.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

7

# APPENDIX

Exhibits:

1. Photographs of Employee's helmet and reflective shirts and vests
2. Text messages between Employee and Twin Stone supervisor
3. "Daily Analysis of Dangers" Report of general contractor
4. Medical Records of Hughston Clinic
5. Medical Bills of Hughston Clinic
6. Employee's Responses to Twin Stone's Interrogatories
7. General Contractor's Safety Orientation Roster
8. Subcontractor Agreements between various subcontractors and Twin Stone
9. Payment receipts for Twin Stone payments to apartment complex
10. F&V Invoice for work performed for Twin Stone on March 12, 2018
11. Photocopies of checks payable to F&V from Twin Stone for work completed weeks ending March 9, 2018 and March 23, 2018.

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Twin Stone's Motion for Pre-Expedited Hearing Discovery
5. Employee's Response to Twin Stone's Discovery Motion
6. Order for Discovery and Setting Expedited Hearing
7. Twin Stone's Motion to Extend Filing Deadline
8. Order Extending Time to File Expedited Hearing Submissions
9. F&V's Motion to Quash Notice of Vargas' Deposition
10. Twin Stone's Response to Motion to Quash
11. Agreed Order on Motion to Quash
12. Twin Stone's Pre-Expedited Hearing Submissions
13. Employee's Brief
14. Employee's Witness and Exhibit List
15. F&V's Pre-Expedited Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of September, 2018.

| Name | Email | Service sent to: |
|---|---|---|
| Bryce W. Ashby, Attorney for Employee | X | bryce@donatilaw.com |
| Nicholas J. Peterson and Catherine Dugan, Attorneys for Twin Stone | X | nick@petersonwhite.com cate@petersonwhite.com |
| David Darnell and Dennis Sadler, Attorneys for F & V Ceramic Installers | X | david.darnell@leitnerfirm.com dennis.sadler@leitnerfirm.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

9